[Cite as *State v. Black*, 2017-Ohio-5802.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| ROGER BLACK | : | Case No. 16-CA-90 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County
Court of Common Pleas, Case No.
15 CR 00705

JUDGMENT:      Affirmed

DATE OF JUDGMENT:      July 11, 2017

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

WILLIAM C. HAYES      TODD W. BARSTOW
Licking County Prosecutor      538 South Yearling Road, Suite 202
Columbus, Ohio 43213

By: PAULA M. SAWYERS
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, Ohio 43055

*Baldwin, J.*

**{¶1}** Appellant Roger Black appeals a judgment of the Licking County Common Pleas Court convicting him of two counts of rape (R.C. 2907.02(A)(2)) and two counts of kidnapping (R.C. 2905.01(A)(4)) with sexual motivation, repeat violent offender and sexually violent predator specifications. Appellee is the State of Ohio.

<u>STATEMENT OF THE FACTS AND CASE</u>

**{¶2}** In the late evening of October 11, 2015, appellant and his cousin were driving an SUV on West Main Street in Newark, Ohio. C.S. was walking along the street, and appellant and his cousin asked if she would like a ride. She accepted. They drove around town for several hours.

**{¶3}** Eventually they ended up at appellant's residence. C.S. was tired, and appellant told her she could stay in his upstairs bedroom. She was homeless at the time, and appellant offered to let her stay with him for a few days until she reported to the Licking County Jail to serve a misdemeanor sentence.

**{¶4}** C.S. fell asleep, but was awakened by a strange noise. She then saw appellant standing in the room, holding a knife. She told him she had to use the restroom. He said, "Piss yourself, bitch," then jumped on top of her. He put his hands around her neck two times, choking her. Appellant pulled down her pants, handcuffed her, and had vaginal intercourse with her. He put her pants back on and led her downstairs. Believing appellant was taking her to the basement, C.S. ran out the door and across the street. She ran to a home with a porch light on and began yelling for help. The residents of that home called the police.

{¶5} Police arrived and spoke to both C.S. and appellant. Appellant told police that he had engaged in consensual sex with C.S., and that she had introduced the handcuffs. He claimed that C.S. threatened to claim appellant raped her unless he gave her money or drugs. Officers did not arrest appellant at the time based on the conflicting stories and C.S.'s refusal to go to the hospital for an examination.

{¶6} Late at night on October 17, 2015, B.B. was walking along West Main Street in Newark. Appellant drove up to her and asked if she needed a ride, which she accepted. B.B. told appellant she was looking for her boyfriend and he was probably at the Family Dollar store. Appellant instead took B.B. to a remote area, parking in a gravel parking lot. He forced B.B. at knifepoint to remove her pants, and engaged in vaginal intercourse with her. He drove B.B. around the area for several hours, including a trip to downtown Columbus, before dropping her off in Newark. She contacted her father, who called the police. She was taken to the hospital for a sexual assault examination.

{¶7} Sgt. Eskins of the Newark Police Department heard about the incident with B.B., and thought the suspect sounded like appellant, as he had been involved in the investigation concerning C.S. the week before. B.B. identified appellant from a photo array.

{¶8} Appellant was indicted by the Licking County Grand Jury with three counts of rape and two counts of kidnapping, with sexual motivation, repeat violent offender, and sexually violent predator specifications attached to each count. The case proceeded to jury trial in the Licking County Common Pleas Court, with the sexually violent predator and repeat violent offender specifications bifurcated for trial to the court.

{¶9} At trial, appellant testified that C.S. initiated the sexual encounter and produced the handcuffs. He testified that after they were finished engaging in sex, C.S. told him that unless he gave her money or drugs, she would tell police that he had raped her. He testified that he contacted the Newark police to report the extortion allegations. As to B.B., he testified that he drove her to an abandoned truck stop near Buckeye Lake, where they engaged in consensual sexual intercourse.

{¶10} Appellant was found not guilty of one charge of rape, but found guilty of the remaining charges. The sexually violent predator and repeat violent offender specifications were then tried to the court at a hearing in which the parties provided an agreed stipulation and exhibits for the court's consideration. The court found the State proved beyond a reasonable doubt that appellant was a sexually violent predator and repeat violent offender. He was sentenced to an aggregate term of incarceration of twenty-six years to life.

{¶11} Appellant assigns two errors:

{¶12} "I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF RAPE, AND KIDNAPPING AS THOSE VERDICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶13} "II. THE TRIAL COURT IMPROPERLY ADJUDICATED APPELLANT A SEXUALLY VIOLENT PREDATOR SINCE THOSE ADJUDICATIONS WERE NOT

SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶14} In his first assignment of error, appellant argues that the convictions of rape and kidnapping are against the manifest weight and sufficiency of the evidence.

{¶15} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 678 N.E.2d 541 (1997), *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶16} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶17} Appellant was convicted of two counts of rape in violation of R.C. 2907.02(A)(2), which states that, "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." He was also convicted of two counts of kidnapping in violation of R.C. 2905.01(A)(4):

(A)     No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will[.]

**{¶18}** Appellant does not argue that the State failed to prove any specific element of the crime, but rather argues that the testimony of neither victim was credible. He argues that C.S. used drugs and had a history of theft, prostitution, and lying. He argues that she claimed she sent text messages seeking help, but could not verify when or if the messages were sent, and further that her story that she fled the locked house while her hands were cuffed behind her back is not believable. He argues that B.B. admitted to telling the story differently so many times that she was not sure which version she told to whom.

**{¶19}** However, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶20}** C.S. testified that at appellant's house, she fell asleep, but was awakened by a strange noise. She then saw appellant standing in the room, holding a knife. She told him she had to use the restroom. He said, "Piss yourself, bitch," then jumped on top of her. He put his hands around her neck two times, choking her. Appellant pulled down

her pants, handcuffed her, and had vaginal intercourse with her.  He put her pants back on and led her downstairs.  Believing appellant was taking her to the basement, C.S. ran out the door and across the street.  She ran to a home with a porch light on and began yelling for help.  The residents of that home called the police.  This is sufficient testimony, if believed by the jury, to support the convictions for rape and kidnapping concerning C.S.

{¶21}  C.S. testified that she was using both methamphetamine and heroin at the time of the crime, and admitted to prior criminal convictions of theft, falsification, and possession.  She further admitted that she had no housing because she spent her money on drugs.  She admitted that she refused to go to the hospital for a sexual assault examination, but testified that she felt the police believed appellant's version of the facts over hers, and she therefore didn't see any use in going to the hospital.  The jury was well aware of the problems in the victim's past, yet found her testimony credible.  While appellant also argues that her testimony that she escaped his home while handcuffed is not credible, one of the residents of the home testified that she was shaking and crying, and her makeup was running.  She had one boot on, and was distraught.  He testified that he had never seen anyone "scared like that."  Tr. 246.  We do not find that the jury lost its way in believing C.S.'s testimony.

{¶22}  As to B.B., appellant argues that she admitted to telling multiple versions of the story.  B.B. did initially tell a police officer that appellant forced her to have oral sex and to give him a hand job, yet she did not testify to these acts during trial. During cross-examination, the following colloquy occurred:

A.  Honestly, I don't think I like said it like that, but I had a – I had talked to like – told so many people what had happened by then, that I was just trying to tell them like what had happened—

Q. Okay.

A.  Like I don't –

Q.  And I guess what I'm asking is this is the very first officer but are you saying you've told the story so many times you're not sure who you told what?

A.  Well, I had – my Dad first picked me up so I had told him and then my brother and then my sister and my mom.  And then the cops came so I'm not exactly sure what I told the officer.

**{¶23}**  Tr.385.

**{¶24}**  On re-direct, B.B. testified as follows:

Q.  [B.B.], why might some of your statements have been different today? Why are you having problems recalling?

A.  Because it's been so long.  I don't want to remember.

Q.  Why don't you want to remember?

A.  Because I didn't want it to happen.

**{¶25}**  Tr. 399.

**{¶26}** The jury heard B.B.'s testimony concerning the inconsistent statements, and her explanation for the inconsistencies.  To the extent she gave inconsistent statements, her credibility was a determination for the trier of fact.  *See State v. Cosolis,* 10th Dist. Franklin No. 01AP-1070, 2010-Ohio-4302, ¶56.  The judgment finding appellant

guilty of rape and kidnapping as to B.B. is not against the manifest weight or sufficiency of the evidence.

**{¶27}** The first assignment of error is overruled.

II.

**{¶28}** In his second assignment of error, appellant argues that the court's judgment adjudicating him a sexually violent predator is against the manifest weight and sufficiency of the evidence.

**{¶29}** R.C. 2971.01(H)(1) defines a sexually violent predator as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(2) sets forth the factors to be considered in determining whether an offender is a sexually violent predator:

> For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:

> (a)    The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

> (b)    The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

(c)     Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

(d)     The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

(e)     The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

(f)     Any other relevant evidence.

**{¶30}** The State must prove this designation beyond a reasonable doubt. *State v. Yoder,* 5th Dist. Stark No. 2011-CA-00027, 2011-Ohio-2975, ¶56.

**{¶31}** Appellant appears to argue that the State must produce evidence on all of these factors in order to sustain the burden of proof. However, the statute clearly states that these factors *may* be considered, and does not require proof of each of these specific factors to prove beyond a reasonable doubt that a person is likely to engage in the future in one or more sexually violent offenses. Further, subsection (f) allows the court to consider any other relevant evidence, which indicates that the court is not limited to a consideration of these specific factors in making its determination.

**{¶32}** The sexually violent predator specification was tried to the court based on stipulated documents, as well as the testimony presented during the trial in the instant case. Appellant argues that these documents included police reports with inadmissible hearsay. Appellant did preserve the right to argue that the police statements were inadmissible on appeal; however, appellant has not argued this issue separately in his brief, and we may therefore disregard it pursuant to App. R. 12(A)(2).

{¶33} Further, there is sufficient evidence in the record independent of the police reports to support the finding that appellant is a sexually violent predator. In 2005, appellant was convicted of two counts of rape and gross sexual imposition upon a plea of no contest. The judgment entry in that case states that appellant committed the worst form of the offense by "blitzing a girl and raping her, picking her out at random from the bike path and showing no remorse or responsibility for his actions." Judgment entry, April 6, 2005. The Bill of Particulars filed in that case states that appellant grabbed a sixteen-year-old girl who was walking to school. He told her not to say anything and to come with him. He kept her with him for four hours, engaging in various sex acts. The victim was afraid appellant would hurt or kill her. When he finally fell asleep on a picnic table, she ran off to get help. The second victim in that case was jogging on a bike path. Appellant grabbed her around the waist and told her to come with him to a wooded area. She resisted, believing he would harm or kill her. He pulled out a knife and showed it to her, then grabbed her wrist and tried to pull her with him. She dropped to her knees and told appellant she was going to be sick. When his attention was turned from her, she ran and asked someone to call 911.

{¶34} In addition, the testimony in the instant case demonstrates that appellant used a knife and handcuffs to aid in the commission of the crimes, and the court specifically noted that his past crimes were similar to the instant offenses. Appellant had 922 days remaining on postrelease control from his earlier convictions when he committed the instant crimes. Further, the court had before it the recidivism risk assessment completed during his incarceration on the 2005 convictions. Based on all

the evidence before the court, the court did not err in finding appellant to be a sexually violent predator.

**{¶35}** The second assignment of error is overruled.

**{¶36}** The judgment of the Licking County Common Pleas Court is affirmed. Costs are assessed to appellant.

By: Baldwin, J.

Gwin, P.J. and

John Wise, J. concur.